IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| RUBMARIE VALENTIN LUGO; HERNAN OTERO AND THEIR LEGAL CONJUGAL PARTNERSHIP<br><br>　　Plaintiffs<br><br>　　vs.<br><br>HOSPITAL MATILDE BRENES INC d/b/a DOCTORS' CENTER HOSPITAL BAYAMON;CONTINENTAL INSURANCE COMPANY; DR HECTOR RIVERA RIVERA; MARY DOE AND THEIR LEGAL CONYUGAL PARTNERSHIP; S I M E D ; EMERGENCIOLOGOS PARA PUERTO RICO PSC; XYZ INSURANCE CO.;DR.ANGEL TORRES SANCHEZ; JANE DOE AND THEIR LEGAL CONYUGAL PARTNERSHIP; PUERTO RICO MEDICAL DEFENSE INSURANCE COMPANY; | CIVIL NO.<br><br><br><br>TORTS MEDICAL MAL PRACTICE |

**COMPLAINT**

**TO THE HONORABLE COURT:**

　　COME NOW Plaintiffs represented by the undersigned counsel and respectfully before this Honorable Court allege, stay and pray:

**JURISDICTION**

　　1.　The jurisdiction of this Honorable Court is invoked under 28 U.S.C.A section 1332 since Plaintiffs are citizens and residents of the State of Connecticut and the matter in controversy exceeds the sum of $75,000.00.  are actionable under Article

1802, and Article 1803 et seq., of the Civil Code of Puerto Rico, 31 L.P.R.A section 5141 et seq.

2. The plaintiffs demand trial by jury.

## THE PARTIES

3. Plaintiffs Rubmarie Valentín Lugo and Hernan Otero are both of legal age and married. They reside in 216 Cook Avenue 1/f Meriden, Connecticut 06451 and are the Plaintiffs in this matter.

4. Hospital Matilde Brenes Inc. d/b/a Doctor's Center Hospital Bayamón (from now Hospital) at all relevant times is a private medical institution authorized under the laws of the Commonwealth of Puerto Rico to provide medical services with facilities in Bayamón, Puerto Rico, and for the negligent acts or omissions of its agents, employees, personnel, and contractors or subcontractors inasmuch they resulted in the damages for which plaintiffs herein claim.

5. At the time of the events prompting this complaint the Hospital was insured against the medical malpractice acts or omissions of those physicians acting under its patronage and/or their agents, employees, personnel, and contractors or subcontractors by Continental Insurance Company.

6. Doctor Hector Rivera Rivera (from now on Dr. Rivera) is a physician authorized under the laws of the Commonwealth of Puerto Rico to practice medical profession in this jurisdiction. Dr. Rivera was the physician who received and treated Rubmarie Valentin at the emergency room of the Hospital on December 27, 2011

Doctor Rivera at all relevant times was an employee, agent, contractor or subcontractor rendering medical emergency services at the Hospital and under its auspices.

7. At the time of the events prompting this complaint Dr. Rivera was insured by SIMED with an insurance policy to cover the negligent medical acts or omissions incurred by her. SIMED is legally bound and jointly and severally liable to plaintiff, by virtue of the policy issued on Dr. Rivera behalf, and to compensate plaintiffs for his negligent acts and omissions.

8. At the time of the events prompting this complaint Dr. Rivera was married to Mary Doe and together they form a Conjugal Partnership which received a financial or economic gain from Dr. Rivera medical practice. Dr. Rivera spouse is herein denominated by a fictitious name once its real name is currently unknown but it will be correctly denominated upon learning it. Both Mary Doe and the Conjugal Partnership formed by him and Dr. Rivera are jointly and severally liable and responsible to plaintiff for the acts or omissions amounting to medical malpractice incurred by Dr. Rivera in this case.

9. Emergenciologos para Puerto Rico PSC (from now on Emergenciologos) is a Medical Group which was contracted by the Hospital to operate its emergency room and/or to which Dr. Rivera and Dr. Torres Sánchez was an agent, member, contractor or subcontractor or to which she belongs or was related in any other legal capacity. Emergenciologos received a financial or economic gain from the Hospital

and/other sources for the operation of the Hospital's emergency room and/or for the medical practice of Dr. Rivera and Dr. Torres with the Group at the time of the events for which this complaint is filed. Emergenciologos is also jointly and severally liable to plaintiffs for the negligent acts or omissions incurred while Mrs. Valentín was present at the emergency room and for those incurred by Dr. Rivera and Dr. Torres in this case.

10. At the time of the events prompting this complaint Emergenciologos was insured against the medical malpractice acts or omissions of those physicians acting under its patronage such as Dr. Rivera and Dr. Torres by XYZ Insurance Company. This insurance company is denominated by a fictious name once its real name is currently unknown but will be correctly denominated upon learning it. This insurance company is jointly and severally liable to plaintiffs for the negligent medical acts or omissions incurred by Dr. Rivera in this case.

11. Dr.Angel Torres Sánchez (from now on Dr.Torres) is a physician authorized under the laws of the Commonwealth of Puerto Rico to practice medical profession in this jurisdiction. Dr. Torres was the physician who received and treated Rubmarie Valentin at the emergency room of the Hospital on December 27, 2011 Doctor Torres at all relevant times was an employee, agent, contractor or subcontractor rendering medical emergency services at the Hospital and under its auspices.

12. At the time of the events prompting this complaint Dr. Torres was

insured by Puerto Rico Medical Defense Insurance Company with an insurance policy to cover the negligent medical acts or omissions incurred by her. Puerto Rico Medical Defense Insurance company is legally bound and jointly and severally liable to plaintiff, by virtue of the policy issued on Dr. Torres behalf, and to compensate plaintiffs for his negligent acts and omissions.

13. Dr. Angel Torres Sánchez (from now on Dr. Torres), Jane Doe and their Legal Conyugal Partnership and MNO Insurance Company are those other persons, natural or legal, which could be responsible to the plaintiffs for the acts or omissions subsequently described herein and whose real names are currently unknown at this time, but which are jointly and severally liable to plaintiffs in this case.

## THE FACTS

14. On December 27, 2011, around noon, Plaintiff, Rubmarie Valentín, with approximately 36 weeks pregnancy developed sudden onset abdominal and pelvic pain, while on her lunch break working at Bayamón Doctor's Center Hospital.

15. She was transfered to the same Hospital emergency room, where she was assisted at 1:09 p.m and the vital signs were obtained and recorded, no fetal heart rate was recorded. The impression diagnosis was back pain, pelvic pain and renal colic. The medical orders were CBC, U/A, PT, PTT, CMP and renal sonogram (even though the record does not show these orders). The orders were taken at 1:15 p.m

16. The test results were available between 2:47 p.m and 3:18 p.m, with normal results, the renal sonogram was interpreted as moderate right hydronephrosis.

17. After the Physician notes at 1:09 p.m., there are no further Physicians progress notes or Nurse's notes, niether consultation or any other information, that could reveal Plaintiff's condition after said time. Even though Plaintiff was complaining of severe pelvic pain.

18. Since Mrs. Valentín OB/GYN, Dr. Jorge Otero Quintana was at Manatí, where at Plaintiff resides and was treated her pregnancy, arrangement for her transfer to Manatí started si the pain began around 1:00 p.m, but the transfer was not perform aproximately until 7:00 p.m. to 7:15 p.m. by then Plaintiff claim was suffering from severe pelvic pain and was in active labor.

19. The Certified Copy Record from the Doctor's Center Hospital in Bayamón does not  have any Transfer Note, nor a wrtitten explanation about the decision making process, the risks and benefits of the transfer at that moment or any other information.

20. Plaintiff was received at Doctor's Center Hospital  emergency department in Manatí, at 8:15 p.m. The nurse obtained and recorded the vital signs: BP 60/30, , P 152, R 20, T 36, and **fetal heart rate 0**. The chief complaint recorded by the nurse was: "35 weeks pregnant patient had contrations, and was pale, diaphoretic and restless.Was categorized as an emergency and referred immediatley to the emergency physician, with a diagnosis of pelvic pain.

21. Plaintiff was subsequently evaluated by the Emergency room physician and recorded the obstetric history and the date of confinement, which was January 11th, 2012. The Physical examination was recorded as tachycardia without respiratory distress; the abdomen was gravid with tenderness to palpation. The fetal heart frequency cannot be obtained, even with a Doppler device.

22. The impression diagnosis was pelvic pain and rule out abruptio placentae. The ER Physician called Plaintiff OB/GYN, who advised to bring the patient immediately for evaluation. At 9:00 p.m. the nurse recorded that no fetal heart rate was obtained with the fetal monitor and there was vaginal bleeding. At 9:20 p.m. Dr. Otero, her OB/GYN, ordered to prepare the patient for the operating room with a presumptive diagnosis of abruptio placentae for an emergency exploratory laparatomy.

23. An exploratory, under general anesthesia, was done and a rupture uterus by a previous cesarean section scar and intra uterus death fetus was found.

24. While at Doctor's Center Hospital in Manatí, Plaintiff became hypovolemic due to an hemorrhagic shock and a central line (yugular) was placed to administer replacement IV fluids, blood, blood products and medication. She also underwent endotracheal intubation and mechanical ventilator assistance and was transferred in critical condition to the intensive care unit.

25. Plaintiff, also developed serious complications as anemia, hypovolemic shock, respiratory acidosis, adynamic ileus with abdominal distension that requiered nasogastric tube for decompression, disseminated intravascular coagulopathy and

respiratory insufficiency with pleural effusions.

26. On December 30th, 2011, Plaintiff was transferred to the General Medicine Ward and finally was discharged on January 3rd, 2012.

27. After been discharged, Palintiff became aware her sudden neurologic deficit in taste and in her sense of smell. For that condition she is currentley treated by Neurologist, Dr. Gian Carlo Gierbolini.

28. The statutes of limititaion were tolled against all Defendants with the Complaint Civil No. 12-1757, filed on September 13, 2012. In that Complaint Plaintiff invoked jurisdiction under a federal question of Emergency Medicalt Treatment and Active Labor Act (EMTALA) and also invoked supplemental jurisdicction for their state law claims against all Defendants under Articles 1802 and 1803 of the Puerto Rico civil Code.

29. On December 18, 2014, a Judgment was rendered, in which the EMTALA causa of action was dismiss and the state law claims dismiss without prejudice.

## MEDICAL MALPRACTICE CAUSE OF ACTION

30. Plaintiffs cause of action is presented under Article 1802 and 1803 of the Civil Code of Puerto Rico, 31 L.P.R.A section 5141 and 5142.

31. Doctor Rivera departed from the best medical practice while treating Mrs.Valentín in as much failed to properly evaluate and diagnose Plaintiff's emergency medical condition and symptoms, and failed to consult with any specialist.. In addition, Dr. Rivera's negligence created a health complications that put Mrs.Valentín life in

jeopardy and her unborn child death. A cause of action against Dr. Rivera is actionable under Article 1802 of the Puerto Rico Civil Code, 31 LPRA sections 5141 and 5142, and this Honorable Court can exercise its supplemental jurisdiction over it.

32. Defendant Physicinas and the Hospital were negligent after failing to follow up and give any treatment to Plaintiff, after Physicians evaluated Plaintiif at 1:09 p.m, orders were taken at 1:15 p.m, then between 2:47 p.m and 3:18 the test reports were availbale. Defendants Physicians failed to give any further treatment or perform any additional test the rest of the time she was at the ER, eventhough Plaintiiff was complaining of severe pelvic and abdominal pain. Not even, sending Mrs. Valentín to Labor Room for Electronic Fetal Monitoring to trace the fetal heart rate or frequency of her unborn child.

33. The Emergency Group. at all relevant times controlled and operated the Hospital's emergency room, and/or recruited and supervised Dr. Rivera While doing so the Emergency Group obtained a financial benefit from the emergency room operation and/or from the medical practice of Dr. Rivera and as such is vicariously liable for Dr. Rivera acts and omissions amounting to medical negligence. The Emergency Group failed in supervising Dr. Rivera medical practice and the Hospital's emergency room operation at the time of the events prompting this complaint. The cause of action against the Emergency Group is actionable under Article 1803 of the Puerto Rico Civil Code, 31 LPRA section 5142 for which this Honorable Court can also exercise its supplemental jurisdiction.

34. Doctor John Doe, is another physician who departed from the best medical practice, while treating, Mrs. Valentín, or that participated in her negligent medical treatment aforestated. A cause of action against Dr. John Doe is actionable under Article 1802 of the Puerto Rico Civil Code, 31 LPRA sections 5141 and 5142, and this Honorable Court can exercise its supplemental jurisdiction over it.

35. The Hospital is also vicariously liable for the negligent acts or omissions of Dr. Rivera, the Emergency Group, or of any other personnel, nurses, technicians, or employees involved in Mrs.Valentín medical treatment per the local law of torts. The Hospital received a financial gain from their medical practice, operations and duty performance, and was therefore obligated to supervise and to monitor said personnel, nurses, technicians, employees, agents, contractors, or subcontractors. This Honorable Court can also exercise its supplemental jurisdiction over plaintiffs claims against the Hospital.

36. The Hospital is also vicariously liable for the negligent acts or omissions of Dr. John Doe in Mrs. Valentín medical treatment per the local law of torts. The Hospital received a financial gain from their medical practice, operations and duty performance, and was therefore obligated to supervise and to monitor said employees, agents, contractors, or subcontractors. This Honorable Court can also exercise its supplemental jurisdiction over plaintiffs claims against the Hospital.

37. This Honorable Court may also exercise its supplemental jurisdiction over plaintiffs claims against the insurance companies of all co defendants. These companies

are authorized to conduct business in the Commonwealth of Puerto Rico and are legally liable by virtue of the insurance policies issued on behalf of all co defendants.

## DAMAGES

38. As a result of the negligent acts and omissions of defendants, under Articles 1802 and 1803 of the Puerto Rico Civil Code, which prompted the death of Plaintiffs baby boy.

39. Mrs. Valentín suffered great pain during all the time she was not treated appropriately, as a matter of fact she almost die at Doctor's Center Hospital in Manatí, was at intensive care unit. These damages should be compensated in no less than one million dollars $1,000,000.00.

40. Mrs. Valentín, as result of the negligent acts and omissions of defendants, under Articles 1802 and 1803, supra, developed a neurologic deficit in taste and in her sense of smell. These damages should be compensated in no less than one million dollars $1,000,000.00.

41. Plaintiffs damages, prompted by defendant's deviations from Articles 1802 and 1803 cause Plaintiffs, Mrs. Rubmarie Valentín and Mr. Hernán Otero, severe mental anguishes. Plaintiffs claims a compensation of no less than three million dollars $3,000,000.00 for these damages.

42. All of the above named defendants, including their Conjugal Partnership, and those mentioned in paragraph fourteen herein, are jointly and severally liable to

plaintiff for the actions and/or omissions for which this complaint is filed.

**WHEREFORE:** It is respectfully requested from this Honorable Court to enter judgment on plaintiff's behalf and against defendant, who are jointly and severally liable to plaintiff in no less than the amounts above mentioned, plus cost and attorneys fees.

**I HEREBY CERTIFY**, that on 17th January, 2015, I electronically filed the foregoing complaint with the Clerk of the Court using the CM/ECF system.

In Ponce, Puerto Rico this 17 th day of January, 2015.

**RIVERA - SEDA LLC**

By: S/ARNALDO RIVERA SEDA

**ARNALDO RIVERA SEDA**
**USDC-PR NO. 213808**
Edificio María Isabel
Calle Villa 125, Suite 2 (Bajos)
Ponce, Puerto Rico 00717.
Tel. (787) 841-0200
Fax (787) 841-0200
riveraseda@gmail.com